**ENFIELD'S COMMUNICATIONS, INC.,
etc., Plaintiff,**

v.

**COM–U–TROL CORP., etc., Defendant.**

**Civ. No. 69–1081.**

United States District Court,
S. D. Florida.

April 16, 1970.

Steven J. Rose and A. Budd Cutler, Miami, Fla., for plaintiff.

Tobias Simon, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CABOT, District Judge.

This cause came on for hearing before the court sitting without a jury. After having considered the proofs submitted, the record as it appears in the file, and the advices of counsel, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The plaintiff, Enfield's Communications, Inc., a Florida corporation, filed this suit seeking to rescind an option agreement entered into between it and the defendant, Com-U-Trol Corp., a Delaware corporation, with its principal place of business in Illinois, and recover $50,000 paid by Enfield's under the agreement upon the basis of alleged misrepresentation of material facts rightly relied upon by Enfield's to its detriment. The defendant has filed a counterclaim seeking to recover $25,000 as the balance due and owing under the terms of the agreement. The court has jurisdiction in this matter pursuant to the Diversity Statute, 28 U.S.C. § 1332.

The defendant, Com-U-Trol Corp., was and is in the business of manufacturing and marketing a conference call device

under the registered trademark name "Confra-Call." The "Confra-Call" unit is a device which, when attached to one's telephone, is designed to allow instantaneous conference calls between multiple parties and transfer of calls without the assistance of an operator, while at the same time affording strict privacy to the conferees.

The records introduced at trial indicate that on June 14, 1969, Enfield's and Com-U-Trol entered into an option contract whereby Enfield's paid $50,000 of a total $75,000 consideration for the right to utilize the four months until September 14, 1969, to test proposed markets for the "Confra-Call" and to determine the acceptability of a proposed indemnity agreement, all in contemplation of exercising or refusing its right to become the exclusive distributor for the "Confra-Call" within the United States and Canada, as provided for in a distributorship agreement executed that same day.

The complaint alleges that on or about June 14, 1969, Com-U-Trol represented to the plaintiff that the device could be legally placed upon any telephone, and that there would be no interference with the sale, operation, and use of the device by telephone companies. Plaintiff further alleges that those representations, upon which it had a right to rely and in fact did rely to its detriment, were false and were known to be false when uttered by the defendant. The defendant has denied that there was such a misrepresentation and has further asserted, assuming arguendo that a misrepresentation did take place, that the plaintiff, being involved in an arm's-length transaction with knowledge of the facts, had no right to rely on the statements.

Through their separate pretrial stipulations, counsel were in agreement that the only fact alleged to have been misrepresented was whether or not the defendant's device was "compatible" with telephone company equipment, with that term so defined as to raise the additional or second issue in this case as to whether the parties could have legally contracted for the sale and purchase of a device if that device violates the provisions of a valid tariff. Resolution of this second issue in the negative will necessarily preclude consideration of the misrepresentation claim since a court will neither enforce nor aid in the rescission of an illegal contract, but rather will leave the parties as it finds them.

ILLEGALITY

Title 47, U.S.C. § 201 et seq., provides for the filing of tariffs by every common carrier engaged in interstate or foreign wire communications. Pursuant to that statute, American Telephone & Telegraph adopted a tariff which prohibits the attachment of devices to a telephone where the device interferes with the "integrity of the system."

In Carter v. American Telephone & Telegraph, 5 Cir.1966, 365 F.2d 486, 489, the Fifth Circuit affirmed the district court in invoking the doctrine of primary jurisdiction to refer the question of the validity of a telephone company's equipment tariff to the Federal Communications Commission. The trial court states that "* * * a tariff required by law to be filed is not mere contract. It is the law." This statement reflecting established law in this circuit, Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co., 5 Cir.1962, 303 F.2d 692, 696; United States v. Associated Air Transport, Inc., 5 Cir.1960, 275 F.2d 827, has been twice cited elsewhere with approval, Palermo v. Bell Telephone, 3 Cir.1969, 415 F.2d 298; Shehi v. Southwest Bell Telephone, 10 Cir.1967, 382 F.2d 627, and it is clear that a contract which violates the terms of an administratively valid and applicable tariff, as is the tariff here, is an illegal contract, one void, of no effect, and, hence, unenforceable. Therefore the testimony offered with respect to the effect, if any, the "Confra-Call" had upon the integrity of the telephone system is vital to resolution of the illegality issue.

Plaintiff's expert witness, Louis D. Speranza, a divisional level engineer with American Telephone & Telegraph, testified that the "Confra-Call" interferes with the telephone system in two particulars as it (1) fails to disconnect and ties up lines under some conditions where a call is routed through a certain type of central telephone office known as a "step by step" central office, and (2) causes "impedance mismatch." "Impedance" means resistance to the even flow of electrical current over the telephone lines. When the electrical current flows evenly over a line the system is transferring maximum power and is operating efficiently, but when an impedance mismatch occurs, i. e., an uneven flow of electrical current, one or both parties suffers a partial or complete loss of ability to hear the other, in which case the integrity of the system has been interfered with. This may be corrected by the installation of an "interface,' which is a device designed to connect the foreign accessory, the "Confra-Call", to the telephone system in such a way as to protect the integrity of the system. No such interface presently exists but one is to be designed by American Telephone & Telegraph for rent to users of "Confra-Call."

The defendant's expert, Tom McKay, a part-time consulting engineer for Com-U-Trol, testified, not that the device did not cause impedance mismatch, but rather that the mismatch that does occur is no different from that occurring under certain conditions from every day use of the telephone company's own equipment. The assertion that the telephone company cannot require of another what it does not require of itself, an opinion expressed by Ray Besing, defendant's transportation expert and counsel in *Carter*, runs to the reasonableness of the tariff, a matter not raised nor cognizable before this court, but rather assertable in the first instance before the Federal Communications Commission, which has such primary jurisdiction, *Carter, supra. See* 47 U.S.C. § 201(a). Moreover, since this court is unable to declare the tariff void as being discriminatory or unreasonable, to hold it unenforceable as to this defendant would result in unequal application of the tariff as between this defendant and others, not parties to this suit, who are using the telephone system in a like manner. The tariff before this court is administratively valid and applicable until shown to be otherwise and so declared by those having primary jurisdiction in the matter.

The testimony as described indicates, and the court so finds, that the "Confra-Call" violates the provisions of the tariff.

Enfield's has presently in its possession 150 "Confra-Call" units which were delivered to it in exchange for $50,000 as partial payment for a total of 500 units to be transferred under the option agreement. In contemplation of trial, counsel entered into a stipulation whereby the "winner would take the money and the loser would get the devices." The plaintiff asserts that, in the event the court finds that the parties entered into an illegal contract, it is entitled to a refund of $8,600 so that it will have paid $41,400 for 150 units, based upon the per unit price of $276, as indicated in the option contract. The plaintiff asserts that this is a proper result under the law of Illinois, by which these parties in the distributorship contract agreed to be bound. The defendant, however, takes the position that in the event the parties entered into an illegal contract, the court must leave them as they stand, i. e., the plaintiff with 150 units and the defendant without any relief on its counterclaim.

In Chesnutt v. Schwartz, 293 Ill.App. 414, 12 N.E.2d 912 (1938), the court, citing 13 C.J. 505, § 447, stated that property or money may be recovered under the terms of an illegal contract where the illegality does not arise from any element of moral turpitude, where the contract is merely malum prohibitum and not malum in se, and where justice plainly requires it. This rule of equity,

when considered alone or together with counsel's stipulation and the provisions of the option agreement which assign a per unit value to the devices in the event the plaintiff did not exercise its distributorship rights, applies to this situation and justifies plaintiff's recovery of $8,600 from the defendant.

## MISREPRESENTATION

While unnecessary to the ultimate disposition of this suit, it seems appropriate to comment upon the plaintiff's claim of misrepresentation which must be examined in light of the dealings between the parties.

From the totality of the testimony, it is obvious that the parties were dealing in an arm's-length transaction, that they did not stand in a fiduciary relationship to one another, and that Enfield's had at least general knowledge of telephone company tariffs which could prohibit attachment of the device.

Royal Flagg Jonas, counsel for Enfield's, testified that he was aware of the Federal Communications Commission decision in the *Carter* case, and further that the purpose of the indemnity provisions contained in paragraph 14 of the distributorship agreement was to save harmless the distributor, Enfield's, against any and all suits that might be brought against it by any telephone company. Moreover, he testified that Enfield's had given assurances that would take the form of refunds to its customers in the event the device could not be used.

The language of the option agreement also evidences the fact that Enfield's was aware of possible telephone company interference with the marketing of the device. The express purpose of the option period was "to test [our] proposed markets, including the acceptability of the [proposed] indemnification agreement * * *." The indemnification "fund," which was established for the protection of the dealers and customers from interference with use of the unit by local telephone companies, did not require any deposits to it in the event Com-U-Trol provided written evidence that any particular telephone company would not interfere within its service area with the operation of the "Confra-Call" unit.

█ The testimony of Mr. Jonas, together with the agreements themselves, clearly establish that the parties were aware of possible telephone company resistance, and the court finds that no misrepresentation has been shown. Moreover, even assuming that Com-U-Trol erred in failing to advise Enfield's of the telephone company's advice regarding the interface, or that Com-U-Trol otherwise misrepresented the compatibility of the device, a finding not supported by the record, the conclusion is inescapable that Enfield's, given the nature of its relationship to Com-U-Trol and the circumstances surrounding their business dealings, did not have the right to rely on any such representations. Rather, having entered into this business deal fully aware of the problems, Enfield's owed to itself the obligation to conduct independent inquiry into the compatibility of the "Confra-Call" unit.

## CONCLUSIONS OF LAW

1. The provisions of the tariff were violated by the "Confra-Call" unit.

2. The tariff has the force of law.

3. The contract entered into between these parties was therefore, and is, an illegal contract which this court will not enforce.

4. The contract, however, involved no element of moral turpitude and was not expressly prohibited by statute.

█ 5. The stipulation of the counsel for the parties that the "winner would take the money and the loser would get the devices," being uncertain and in dispute by counsel, will not be enforced by the court.

6. The plaintiff is entitled to recover $8,600 from the defendant, representing the sum expended for which it has not received an equivalent in "Confra-Call" units.

804

7. Since no money or property has changed hands relative to the $25,000 claimed under the counterclaim, the parties, with respect thereto, will be left as they are and the counterclaim will be dismissed.

Accordingly, it is ordered and adjudged that the plaintiff shall within ten days submit to the court a proposed form of final judgment in accordance with the foregoing, with copy thereof to opposing counsel.